CHARLES L. HAYWARD & another *vs.* ABRAM FRENCH & another.

In an action against the surviving member of a partnership upon a contract made in the partnership name by a deceased partner, the plaintiff is a competent witness, under *St.* 1857, *c.* 305, § 1.

A person lending money to one partner upon a promissory note signed by him in the name of the partnership is entitled to recover therefor against the partnership, if at the time of taking the note he did not know or have reason to know that the money was not to be applied to the use of the partnership; and he is not bound to prove that the money actually went to the use of the firm, even.if he had previously had constant dealings with that partner in his own name, and not with the firm.

In an action on a promissory note and a banker's check, the jury returned a verdict for the plaintiff on the note, and could not agree as to the check. *Held,* that after the verdict had been affirmed, the plaintiff might be allowed to amend his declaration by striking out all except the count on the note, and take judgment on the verdict.

ACTION OF CONTRACT on a promissory note, dated October 3d 1855, for $10,000, payable to the plaintiffs on demand, with interest; and on a check on the Grocers' Bank, dated November 3d 1855, for $2500, payable to bearer. Trial before *Bigelow,* J., who made the following report thereof:

At the dates of the note and check, and for several years previously, the defendants and Josiah B. Kilbourn were copartners and dealers in crockery ware, under the name of French, Wells & Co. The note and check were both signed by Kilbourn in the name of the firm. It was proved and admitted that Kilbourn had for several years in part managed the financial concerns of said firm, and had borrowed money and received discounts in their name and behalf, with the full knowledge and assent of the defendants, and that the money so procured by him went to the use of the firm. It was in dispute whether the defendants knew of the transactions of Kilbourn with the plaintiffs, and

Hayward & another *v.* French & another.

whether any of the money which he procured of them went to the use of the firm. Kilbourn died on the 21st of November 1855. The plaintiffs produced the note and check, and rested their case.

The defendants contended, and offered evidence tending to prove, that the note and check were given by Kilbourn to the plaintiffs for his own private purposes, in fraud of the firm; and that the plaintiffs took them under such circumstances, and with such notice and knowledge of the facts, as would prevent them from recovering thereon against the defendants.

The defendants were both called as witnesses by their counsel, and testified fully to the facts relied on in defence. The plaintiffs, in reply, were called as witnesses. The defendants objected to their competency. But the objection was overruled, and the plaintiffs were permitted to testify.

Upon cross-examination of the plaintiffs, there was evidence tending to show that the plaintiffs, who were brokers, had for more than two years before the date of the note and check been in the habit of buying and selling stocks for Kilbourn on his private account; that the account of these transactions with Kilbourn was kept on their books in Kilbourn's name, and that in one instance the plaintiffs were jointly interested with him in the purchase of stock; that sometimes such purchases and sales were on time, and settled by paying the differences, without actual transfer of the stocks; that during the same period the plaintiffs had been in the habit of lending him money, generally taking his individual notes or checks, with stocks as security; that during the same time Kilbourn had been constantly indebted to the plaintiffs, in a sum continually increasing, until, on the 2d of October 1855, it amounted to more than $43,000; that on said 2d of October the plaintiffs had a settlement with Kilbourn, and took from him, in payment, his own note for $36,000, and two other notes, amounting together to upwards of $7000, made by Kilbourn in the name of the firm; Kilbourn representing to the plaintiffs, at the time, that the last mentioned sum was due and owing from the firm, and that they had been interested to that amount in the transactions with the plaintiffs.

**The** defendants testified that they never had any knowledge of any of the transactions of Kilbourn with the plaintiffs until after Kilbourn's death. But the plaintiffs relied on various facts and circumstances as tending to show that Kilbourn was dealing in real estate and stocks on his own account, and that this was well known to the defendants; and from this evidence contended that the defendants knew, or might have known, of these dealings of Kilbourn with the plaintiffs.

There was evidence in the case which tended to show that the $10,000 procured from the plaintiffs was used by Kilbourn to take up a note for that amount, signed by Kilbourn in the name of the firm, which had been discounted at the Bank of North America, and which was in fact paid by Kilbourn on said 2d of October. The plaintiffs contended, and offered evidence to prove, that the proceeds of this note, when discounted, were used by the firm in their business. On the other hand, the defendants contended, and offered evidence to show, that the money so procured did not go for the use of the firm, but was procured and used by Kilbourn for his own private purposes, and in fraud of the firm.

The defendants asked the court to instruct the jury " that if Kilbourn's transactions with the plaintiffs were wholly or mainly in his own name, for his own purposes, and the plaintiffs had no intercourse with the other partners, then, if the plaintiffs lent him money in the name of the firm, taking from him in his own handwriting the firm's note, the plaintiffs were bound to see to it that the money was in fact for the use of the firm : That if the defendants' firm never had any accounts, credits or transactions, with the plaintiffs, but the plaintiffs' dealings were wholly with Kilbourn, whether in the firm's name or his own, then the plaintiffs could not recover, unless they proved that the proceeds of the note in fact went to the use of the firm : That a partner has no authority to bind his firm, except in partnership transactions within the scope of the business; and he cannot bind the firm by a note in their name, for his use, unless each of his copartners gives his assent thereto ; that such assent cannot be implied from his giving the firm's name to the plaintiffs in other

instances, unless it is proved affirmatively that such use of the firm's name in those other instances was actually for the use of the firm, with the assent of all the partners : That in this case, unless French and Wells both knew that Kilbourn used the firm's name for his own purposes, the defendants are not liable ; and that actual knowledge of such use of the firm's name must be brought home to both defendants : That if Wells, for instance, did not actually know of such misuse of the firm's name by Kilbourn, although by less attention to his own duties and more attention to what Kilbourn was doing, he might have known, then the defendants are not liable, unless the proceeds in fact went to the use of the firm : That if the money went to pay the Bank of North America, and the loan of the Bank of North America was obtained by Kilbourn in the firm's name, but for his own use, without the authority of his partners, then the money did not go to the use of the firm, and the firm are not liable."

The court did not give the instructions asked for, not deeming them in all respects applicable to the case, and also being of opinion that they were calculated to mislead the jury ; but, in regard to the note in suit, instructed the jury substantially as follows: " That the burden of proof throughout the whole case was on the plaintiffs to satisfy the jury that the defendants were liable on the note as a note of the firm, and that this burden did not shift in any stage of the cause : That the note, being signed in the name of the firm by one of the copartners, who, it was admitted, was duly authorized to sign the notes of the firm for the purposes of the copartnership, was *prima facie* evidence of the liability of the defendants thereon, and would entitle the plaintiffs to recover on it, if nothing else was shown to control it : That the general principle of law applicable to contracts made in the name of a firm was this : Whenever credit is given to a firm, within the scope of the business of the firm, it will bind all the copartners ; and no subsequent misapplication of the fund by the party procuring it, to which the creditor is neither party nor privy, will exonerate the firm from liability ; and if therefore one partner, duly authorized to contract loans

on the credit of the firm, should borrow money on the credit of the firm, which he should subsequently misapply to his own private purposes, without any knowledge or connivance on the part of the lender, the firm would be bound thereby: That one copartner had no right to borrow money, in the name and on the credit of the firm, for his own private purposes; that his right to do so was limited to transactions coming within the fair scope of the business of the firm; and that if he went beyond this limit, he was guilty of a fraud on his copartners, and they would not be liable on his contracts, if the person with whom the copartner dealt was in any way party or privy to such misuse of the name of the firm: That in the present case, it being admitted that Kilbourn was authorized to give notes in the name of the firm, and the signature of the note being admitted, the plaintiffs are entitled to recover, unless it appears that the money procured on the note was misapplied by Kilbourn to his own private purposes, and that such misapplication was known to, participated in and connived at, by the plaintiffs: That if there was such misapplication of the money, and the plaintiffs knew, or had reasonable ground to believe, that the money lent by them on the note to Kilbourn was so misapplied, they could not recover on the note: That, in regard to the evidence touching the note discounted at the Bank of North America, if the jury were satisfied that that discount was procured for the benefit of the firm, and actually went to their use, and that the money procured of the plaintiffs on the note in suit was used and appropriated to the payment of such note in the bank, then the money lent by the plaintiffs went to the use and benefit of the firm, and they would be liable on this note; but if that note was discounted at the bank; and the proceeds were used by Kilbourn for his own private purposes, and not for the use of the firm, and the money procured of the plaintiffs was used to pay said note to the bank, the plaintiffs could not recover on the note in suit, if they knew, or had reason to know, that the money procured on the note from the bank was misapplied by Kilbourn to his own private purposes."
Separate instructions were given as to the check.

The jury returned a verdict for the plaintiffs for $8657.08, " it being amount of the note and interest;" and stated to the court that they had not been able to agree as to the check.   The court thereupon ordered the verdict to be amended by striking out the words in quotation marks, and affirmed for the amount of the note only.   The plaintiffs then, after the verdict was affirmed, immediately moved to amend their declaration by striking out all except the count upon the note.   And the case was reserved for the determination of the whole court.

*C. B. Goodrich & G. M. Browne,* for the defendants.   1. The plaintiffs should not have been permitted to testify in their own favor.   The *St.* of 1857, *c.* 305, § 1, provides that " where one of the original parties to the contract or cause of action then in issue and on trial is dead," " the other party shall not be admitted to testify in his own favor."   To a contract by a partnership each partner is a party.   Kilbourn, " one of the original parties to the contract," and the one who in fact made it, was dead.   The case comes therefore within the terms of the statute. It is clearly within its spirit; for what took place at the time of making the note was known only to Kilbourn and the plaintiffs, and to allow the plaintiffs to testify without the possibility of being confronted by Kilbourn, would let in the very evils which this proviso of the statute was intended to shut out.

2. The instructions requested should have been given.   If the plaintiffs, whose previous dealings, down to the day before this note was made, had been with Kilbourn individually, they were bound to know, when lending him money in the name of the firm, that it went to the use of the firm.   And if money is lent to a partner in the name of the firm to pay a specific debt, without knowing whether it is a debt of the firm or not, and it turns out to be the private debt of the borrowing partner, the lender cannot recover against the firm.

3. The verdict was bad, because there were two several issues put to the jury on distinct causes of action, on one of which only the jury found a verdict and disagreed as to the other.   The rule is universal that the jury must dispose of all the issues submitted to them.   Com. Dig. Pleader, S. 19.   3 Graham &

Waterman on New Trials, 1390, 1396, 1398. 3 Salk. 372, 376. *Hick* v. *Keats*, 4 B. & C. 69. *Tinkler* v. *Rowland*, 4 Ad. & El. 868. *Pritchard* v. *Hennessey*, 1 Gray, 294. *Holmes* v. *Wood*, 6 Mass. 2. *Coffin* v. *Jones*, 11 Pick. 45. *Jones* v. *Kennedy*, 11 Pick. 125. *Brockway* v. *Kinney*, 2 Johns. 210. *Van Benthuysen* v. *De Witt*, 4 Johns. 213. *Garland* v. *Davis*, 4 How. 131. *Strohecker* v. *Drinkle*, 16 S. & R. 38. *Vines* v. *Brownrigg*, 2 Dev. 537. *Carr* v. *Stevenson*, 5 Humph. 559. The amendment cannot be allowed, and, if it could, would not make the verdict good. *Allsopp* v. *Brittain*, 25 Eng. Law & Eq. 432. *Miller* v. *Trets*, 1 Ld. Raym. 324. *Patterson* v. *United States*, 2 Wheat. 221. *United States* v. *Keen*, 1 McLean, 429. *Gerrish* v. *Train*, 3 Pick. 124. *Shapleigh* v. *Wentworth*, 13 Met. 358. *Semple* v. *Hailman*, 3 Gilman, 134. In *Hall* v. *Briggs*, 18 Pick. 503, and *Soule* v. *Russell*, 13 Met. 436, the amendment was made before the verdict was affirmed.

*E. Merwin & R. Codman*, for the plaintiffs.

This case was decided in February 1860.

DEWEY, J. The plaintiffs were competent witnesses. The proviso in the statute of 1857, *c.* 305, " that where one of the original parties to the contract or cause of action then in issue and on trial is dead, the other party shall not be admitted to testify in his own favor," is not applicable to a case of a suit brought against a copartnership originally consisting of three members, one of whom has deceased before the trial, and on which trial the plaintiffs are offered as witnesses. The phrase " one of the original parties to the contract " must be held to mean the legal party to the contract. This must confine the exception to the case of a sole party to the contract on one side, or, in case of several joint promisors or copartners, to the case of the death of all of them. This was not the individual contract of any member of the firm, but the contract of the firm, that was set up as the cause of action, and the party was the firm, and not the individual Kilbourn. If it were held otherwise and this proviso deemed applicable to all cases where any member of a firm had deceased, it would be equally applicable whether such deceased member of the firm had any direct agency in the matter

or not. It would equally embrace a joint stock association of twenty as a copartnership of three. The loss of evidence by the death of one of several partners might be very material, but it might also be quite immaterial. As a rule of practice, in the opinion of the court, the view taken at the trial was correct, and the plaintiffs were competent witnesses.

2. No objection exists to the instructions of the presiding judge to the jury, as they embraced all the points of law arising upon the evidence, and were sufficiently favorable to the defendants.

3. The verdict was properly amended in form to correspond with that prescribed by the rules of practice. It was competent to allow the amendment asked for, discontinuing that portion of the cause of action which sought a recovery on the check on the Grocers' Bank, that being a distinct matter; and such amendment may be allowed at any time before judgment rendered in the action. Rev. Sts. *c.* 100, § 22. This amendment obviates all objection to the verdict for want of finding all the issues submitted to the jury. That it was competent for the court, where there are two distinct causes of action, and the jury find a verdict for the plaintiffs for one of them, and state that they cannot agree upon a verdict as to the other, to permit the plaintiffs to amend by striking out that portion of the plaintiffs' declaration which embraces the claim upon which no verdict is returned, and to allow the jury to return their verdict generally for the plaintiffs, is very well settled. *Hall* v. *Briggs*, 18 Pick. 503 *Soule* v. *Russell*, 13 Met. 436.    *Judgment on the verdict.*